## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION

| | |
|---|---|
| **CYNTHIA R. BARRY, on behalf of herself and others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC,**<br><br>Defendant. | **Case No. 3:24-cv-00648-GNS** |

### DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

Defendant Firstsource Solutions USA, Inc. ("Firstsource") hereby respectfully moves to dismiss the putative class action complaint (*see* Dkt. 1, "Complaint") filed by Plaintiff Cynthia R. Barry ("Plaintiff") in the above-captioned matter, in its entirety, pursuant to Fed. R. Civ. P. 12(b)(6). In support thereof, Firstsource provides the following grounds for dismissal.

## I.     INTRODUCTION

In her Complaint, Plaintiff alleges, in a conclusory fashion, that Firstsource violated certain provisions of the Telephone Consumer Protection Act ("TCPA") and its related implementing regulations.[1] Her claim is based on two purportedly "artificial or prerecorded voice" calls allegedly made to her cell phone without her consent. However, Plaintiff fails to allege sufficient non-conclusory facts, pled in accordance with federal pleading standards, supporting an inference that Firstsource bears any legal liability for those alleged calls, let alone that the calls even violated the TCPA in the first instance. It is also axiomatic that Plaintiff cannot simply regurgitate the legal elements of her TCPA claim without factual support and hope to avoid dismissal in any federal court.

That federal district courts across the country have uniformly required plaintiffs to provide more than just barebones conclusions to overcome a dispositive motion at the pleadings stage in TCPA cases is for good reason. As the Court is aware, the TCPA has become one of the most heavily litigated statutes in the United States since its enactment in 1991, with dozens of new complaints filed weekly, largely styled as putative class actions like this case. Given the relief the TCPA affords, this is unsurprising: it is a statute with favorable recovery provisions for would-be plaintiffs ($500 in statutory damages per violative call, which can be trebled to $1,500 for "willful" or "knowing" violations). *See* 47 U.S.C. § 227(b)(3). Thus, the TCPA naturally spawns litigation, and it can be quite lucrative for profit-seeking plaintiffs and their counsel alike. And while attorneys' fees are not

---

[1] *See* 47 U.S.C. § 227(b)(1)(A)(iii); 47 C.F.R. § 64.1200(a)(1).

1

available under the statute, even "remedial laws [like the TCPA] can be abused and perverted into money-making vehicles for individuals and lawyers" and used to seek a windfall of potentially ruinous damages and exorbitant legal fees from otherwise innocent defendants through costly class action litigation. *Saunders v. NCO Fin. Sys.*, Inc. 910 F. Supp. 2d 464, 465 (E.D.N.Y. 2012).[2]

It is within this backdrop that federal district courts have recognized that, at the pleadings stage in TCPA cases and particularly in putative class actions, they must balance the important goal of protecting consumers from unwanted marketing calls against the competing but equally important goal of protecting defendants from abusive litigation. Consequently, TCPA complaints, built on a foundation of barren conclusions lacking in requisite factual support, are routinely dismissed by courts under Rule 12(b)(6) for not meeting federal pleading standards. Here, Plaintiff's similarly-defective Complaint should suffer the same fate and be dismissed for at least the following reasons:

**First**, the entire Complaint should be dismissed under Rule 12(b)(6) because Plaintiff fails to state a plausible claim under the TCPA or to plead adequate facts supporting such a claim. As a threshold matter, aside from a few bald conclusions which are not entitled to any presumption of truth at the pleadings stage, the Complaint lacks facts that would "allow the Court to reasonably infer that defendant is [directly] liable for *each call*" at issue—*i.e.*, that Firstsource itself physically placed each call at issue directly to Plaintiff. *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021) (emphasis added); *see also Lucas v. Telemarketer Calling from (407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) (recognizing successfully pleading direct TCPA liability under Rule 12(b)(6) requires pleading plausible facts demonstrating the defendant itself

---

[2] *See also Babare v. Sigue Corp.*, 2020 WL 8617424 at *2 (W.D. Wash. Sep. 30, 2020) ("It is well-recognized that discovery in [TCPA] class actions is expensive and asymmetric, with defendants bearing most of the burdens."); *Bank v. City of Menasha,* 627 F.3d 261, 266 (7th Cir. 2010) (noting plaintiffs in general sometimes can "us[e] discovery to impose asymmetric costs on [d]efendants in order to force a settlement advantageous to the plaintiff regardless of the merits of his suit").

*physically* placed the calls); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021) (dismissing on this basis, applying *Lucas*).

In this case, Plaintiff takes a classic "either/or" pleading approach that has been rejected by federal district courts across the country (including courts in the Sixth Circuit) when evaluating the sufficiency of allegations in TCPA cases under Rule 12(b)(6), and she repeatedly concludes that the subject calls were either "placed" by Firstsource itself or that Firstsource "caused them to be placed" by an unidentified third party or parties. *See, e.g., Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing, holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" to him was insufficient to plead a theory of TCPA liability).[3] Nor does Plaintiff plead any facts remotely supporting a vicarious TCPA liability theory, such that Firstsource could be held liable for the alleged acts of those unknown third parties. Therefore, Plaintiff's entire Complaint should be dismissed on these bases alone. *See, e.g., Nelums v. Mandu Wellness, LLC*, 2023 WL 5607594, at *9 (D.N.M. Aug. 30, 2023) ("Because Plaintiff fails to satisfy the first elements of the TCPA and [an equivalent state statute]—that Defendants were directly or vicariously liable for the text messages—the Court does not reach Defendants' arguments regarding whether Plaintiff adequately plead the other elements" of the asserted claims.).

**Second**, Plaintiff's TCPA claim should also be dismissed under Rule 12(b)(6) because she fails to plead sufficient non-conclusory facts supporting an inference that the subject calls involved use of an "artificial or prerecorded voice" (as opposed to a live person speaking), which is a critical

---

[3] Plaintiff at best concludes she received messages stating "this is Firstsource, calling on behalf of Brandon Regional Hospital." Yet, it is firmly established that simply mentioning a defendant's name on a call does not, standing alone, support an inference that the defendant itself—as opposed to a third party—physically placed that call directly to the plaintiff, as is required to plausibly allege direct TCPA liability under federal law. *See, e.g., Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing TCPA case on this basis, even though there plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). For example, a purported "prerecorded" voicemail could be transmitted by a third party, not by the defendant itself.

3

element for her lone claim. While courts do not expect a plaintiff to know the exact technical specifications of a call at the pleadings stage, they have consistently held that TCPA plaintiffs must plead sufficient actual facts (not bald conclusions) supporting an inference such technology was actually used on a call, or face dismissal. *See, e.g., Manopla v. Sansone Jr's 66 Automall*, 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) (dismissing where the plaintiff "merely proffer[ed] the content of the message and conclusory allege[d] that Defendant utilized a pre-recorded message" with no contextual factual support); *Curry v. Synchrony Bank, N.A.*, 2015 WL 7015311, at *2-3 (S.D. Miss. Nov. 12, 2015) (dismissing where the plaintiff had "'not provided sufficient contextual details to determine whether she spoke to a human or merely heard a recording upon picking up the phone'") (quoting *Aikens v. Synchrony Fin.*, 2015 WL 5818911, at *4 (E.D. Mich. July 31, 2015)).

In this regard, Plaintiff's Complaint is full of conclusory statements and regurgitations of applicable case law, all in an attempt to suggest that the subject calls were "prerecorded." In the same breath, however, Plaintiff also suggests that she ***spoke with*** the callers—*i.e.*, she "informed Defendant that Defendant was calling the wrong number and to stop calling." Dkt. 1, ¶ 35. This contradictory allegation belies any inference that the subject calls were anything other than a routine live call; after all, Plaintiff could not possibly speak with a recording. *See, e.g., Duran v. Wells Fargo Bank, N.A.,* 878 F. Supp. 2d 1312, 1316 (S.D. Fla. 2012) ("On the four occasions Defendant made phone calls to Plaintiff, Plaintiff alleges that he spoke with Defendant's representatives, which negates a claim that the calls were made by an … artificial or prerecorded voice."); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *3 (E.D. Va. Apr. 15, 2019) (dismissing where the "[c]omplaint allege[d] that after plaintiff answered the calls, he was greeted by a live, human representative"). As such, her TCPA claim should be dismissed for this additional reason.

4

## II. RELEVANT ALLEGATIONS

In pertinent part, Plaintiff alleges (or, rather, concludes) that "Defendant **delivered, or caused to be delivered**" two supposed "artificial or prerecorded voice messages" to her cell phone number ending in 2217, on January 25, 2023 and February 8, 2023 respectively. *See, e.g.,* Dkt. 1, ¶¶ 16, 17, 19, 24, 25, 27, 29-33, 52, 57, 62 (emphasis added); *see also id.,* ¶¶ 3, 4, 15, 23, 54, 58, 63, 91 (similarly alleging that "Defendant placed or caused to be placed a call" to her). Though she does not specify which, Plaintiff vaguely alleges she answered "at least one" call. *Id.* ¶ 34.

Further, Plaintiff avers that these messages purportedly "began" by stating "Hello, this is Firstsource, calling on behalf of Brandon Regional Hospital, calling with an important message for Preston Oliver" and that, at some point, they "directed the recipient to visit 'screen.firstsource.com.'" *Id.* ¶¶ 19, 21, 25, 27, 29. Though she vaguely alleges that the messages were either exactly "identical *or substantially* identical" (*id.* ¶ 30 (emphasis added)), Plaintiff does not, however, provide the full content of either alleged message or the phone numbers used by either caller. Nor does Plaintiff allege that the messages gave her a callback number that reached Firstsource directly, or that she tried to call back the numbers used by the callers to call her and reached Firstsource directly, as opposed to some other party (such as the referenced hospital).

Finally, though it mostly just repeats the statutory text, Plaintiff's Complaint includes various conclusions on why she thinks the messages involved an "artificial or prerecorded voice" (though it never specifies which technology was used[4]). *See, e.g., id.* ¶¶ 18, 20, 28, 56, 57. At the same time, Plaintiff also alleges that she "informed Defendant that Defendant was calling the wrong number and to stop calling." *Id.*, ¶ 35. In other words, ***she apparently spoke with someone***.

As discussed below, these allegations are insufficient to survive dismissal in federal court.

---

[4] This matters, because an artificial voice and a prerecorded voice are not the same technology.

### III. APPLICABLE LEGAL STANDARD

Rule 12(b)(6) mandates dismissal of a complaint for failure to state a claim for relief. To avoid dismissal under this Rule, plaintiffs must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Thus, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks and citation omitted); *see also Twombly*, 550 U.S. at 570 (a plaintiff must allege facts that nudge their claims across the line from merely "conceivable" to "plausible"). As such, while the Court must generally accept well-pled factual allegations as true under this Rule, it need <u>not</u> do so for legal conclusions couched as fact, unwarranted or unreasonable inferences, or unsupported speculation. *See Tam Travel, Inc. v. Delta Airlines, Inc.*, 583 F.3d 896, 903 (6th Cir. 2009); *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008); *Eidson v. Tenn. Dep't of Child. Servs.,* 510 F.3d 631, 634 (6th Cir. 2007); *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007); *New Albany Tractor, Inc. v. Louisville Tractor, Inc*., 650 F.3d 1046, 1050 (6th Cir. 2011).

### IV. ARGUMENT

Plaintiff's Complaint seeks relief under Section 227(b) of the TCPA. *See* Dkt. 1, ¶¶ 91-92. That provision provides, in pertinent part, that no person shall "make any call (other than a call made for emergency purposes or made with prior express consent of the called party) using … an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service…." 47 U.S.C. § 227(b)(1)(A)(iii); *see also* 47 C.F.R. § 64.1200(a)(1) (related

6

implementing regulations). As demonstrated below, however, Plaintiff fails to state such a claim or to plead sufficient facts supporting one, in accordance with federal pleading standards.

### A. Plaintiff Fails to Sufficiently Allege a Theory of Liability Under the TCPA.

As a threshold matter, the entire Complaint should be dismissed because Plaintiff fails to plausibly allege a theory of liability under the TCPA. It is well-accepted that there are two potential theories of liability under the TCPA: (i) direct liability; or (ii) vicarious liability. *See, e.g., Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.*, 582 F. App'x 678, 679 (9th Cir. 2014)). This rule means the defendant "must either (1) directly make the call [at issue], or (2) have an agency relationship with the person who made the call [at issue]." *Pascal v. Agentra, LLC*, 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Failure to adequately plead these theories warrants dismissal of <u>any</u> TCPA claim under Rule 12(b)(6), regardless of whether the plaintiff pled facts supporting other elements of their asserted claim(s). *See Nelums*, 2023 WL 5607594, at *9; *see also Tuso v Lennar Corp.,* 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) (dismissing on these bases, ruling similarly). Plaintiff failed to allege either theory.

### i. Plaintiff Fails to Adequately Allege a Direct TCPA Liability Theory.

Again, Plaintiff's Complaint must allege, with sufficient non-conclusory factual support, that Firstsource "made *each call* that she seeks to hold it [directly] liable for" to avoid dismissal under Rule 12(b)(6) . *Brownlee,* 2021 WL 4306160, at *1 (emphasis added). *See also Aaronson,* 2019 WL 8953349, at *2 (dismissing and holding that, "at the pleadings stage, plaintiff must allege facts to support his conclusion or belief that defendant is the party that made the calls" and dismissing where plaintiff "failed to plead facts sufficient to support a theory of direct liability under the TCPA because plaintiff's allegations d[id] not show plausibly that defendant actually, physically initiated the

7

telephone calls at issue"); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (dismissing, and holding: "At the pleading stage, the plaintiff must allege facts to support claim that the defendant is the party that [physically] initiated the phone calls.").

Moreover, as also noted above, adequately pleading direct TCPA liability requires alleging adequate non-conclusory facts supporting an inference that the ***defendant itself***, not a third party, ***physically*** placed each of the calls at issue directly to Plaintiff. *See, e.g., id.*; *Lucas,* 2019 WL 3021233, at *5-6; *Cunningham Health Plan Intermediaries*, 2021 WL 1946645, at *2. *See also Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing and holding that all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call" to avoid dismissal under Rule 12); *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding that all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)).

However, "[m]erely alleging that [a defendant or the defendant's agent] 'made' or 'initiated' [a] call" without factual support "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).[5] *See also Dobronski*, 2024 WL 4363118, at *5 (dismissing, holding the plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plausibly plead any theory of TCPA liability); *Murray*, 2015 WL 4204398, at *2 (dismissing,

---

[5] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, federal district courts evaluating and dismissing conclusory direct TCPA liability claims like Plaintiff's in this case (including those cited above and below, and many others) have uniformly held that "make" or "initiate" in this context means to "physically" place a call or send text. *See also Hicks v. Alarm.com Inc*., 2020 WL 9261758, at *4-5 (E.D. Va. Aug. 8, 2020) (citing *Sheski, supra*); *Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Childress v. Liberty Mut. Ins. Co.*, 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Wallack v. Mercantile Adjustments Bureau, Inc.*, 2014 WL 1515852, at *3 (E.D. Mich. Apr. 18, 2014).

even though plaintiff was allegedly "informed that the call was from Choice Energy," where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the [subject] calls"); *Belleville v. Florida Insur. Services, Inc.,* 2024 WL 2342337, at *1-4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part by,* 2024 WL 2794108 (May 31, 2024) (dismissing, even though one caller allegedly said they were calling "from" the defendant and provided its website to plaintiff); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where the plaintiff concluded the caller's "numbers belonged to [the defendant] Nano or Nano's agent," without sufficient factual support demonstrating that the defendant itself actually physically placed each call at issue directly to the plaintiff); *Katz v. Caliber Home Loans, Inc.,* 2023 WL 5311488, at *3 (N.D. Tex. Aug. 17, 2023) (dismissing on this basis where plaintiff alleged an "unidentified caller 'offered the Defendant's services from the Caliber Home Loan Mortgage Refinance Team'"). These well-reasoned authorities (among many others, some of which are cited below) show that the content of the alleged violative communications, standing alone, is not dispositive on this issue. Put differently, receiving a voice message that purportedly "reference[s] Defendant by name"—as Plaintiff alleges here, at best (Dkt. 1, ¶ 31)—does not support an inference of direct TCPA liability, without more.[6]

Furthermore, federal courts have correctly recognized that TCPA plaintiffs must adequately plead direct liability in all cases ***without the benefit of discovery*** to avoid dismissal

---

[6] It makes perfect sense why federal courts evaluate the facial adequacy of TCPA complaints under Rule 12(b)(6) in this fashion, and often dismiss them for failing to adequately allege a theory of liability. To survive any motion to dismiss in any federal case, all complaints must provide adequate facts establishing "how, when, and where" a legal violation occurred. *Johnson v. Progressive Advanced Ins. Co.*, 587 F. Supp. 3d 277, 280 (W.D. Pa. 2022). This includes "who" committed the violation, a prong which is especially important in TCPA cases. Indeed, the facial plausibility of any TCPA claim turns largely on whether there are sufficient facts pled identifying the actual caller—*i.e.*, who physically initiated the calls. *See, e.g.*, *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017) (holding that "[b]ecause [caller] identity is a ***necessary*** element of all of Plaintiff's [TCPA] claims, this deficiency warrants dismissal of all of Plaintiff's claims") (emphasis added). But Plaintiff did not plead such facts in this case.

under Rule 12(b)(6). *See, e.g., Hurley v. Messer,* 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing where plaintiff did not sufficiently identify who physically placed the subject calls, noting that "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*"); *Hyatt v. J.B. Hunt Transp. Servs., Inc.*, 2015 WL 13648356, at *2 (W.D. Ark. June 16, 2015) (ruling similarly and dismissing).[7]

In short, "direct TCPA liability" means exactly what it sounds like—that the defendant itself, and not some third party, must have physically placed (or made, initiated, delivered, etc.) each call at issue ***directly*** to the plaintiff, for such liability to arise. *See In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach). Thus, an alleged ***indirect*** connection will not suffice for this purpose. *See, e.g., Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("a defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf").

Applying the weight of well-established applicable federal authority above to Plaintiff's conclusory allegations here promptly dooms her Complaint to dismissal on direct liability grounds. For example, throughout her entire pleading, Plaintiff simply parrots the statutory text and/or applicable case law, rather than plead actual facts as required, and just repeats the conclusory refrain "Defendant ***delivered, or caused to be delivered***" supposed "artificial or prerecorded voice messages" to her cell phone. *See, e.g.,* Dkt. 1, ¶ 16, 17, 19, 24, 25, 27, 29-33, 52, 57, 62 (emphasis added); *see also id.,* ¶¶ 3, 4, 15, 23, 58, 63, 91 (similarly alleging that "Defendant placed or caused to be placed a call" to her). In other words, what Plaintiff is <u>really</u> alleging here, at bottom, is that

---

[7] These decisions are consistent with applicable binding Sixth Circuit precedent. *See, e.g., Kolley v. Adult Protective Servs.*, 725 F.3d 581, 587 (6th Cir. 2013) ("A plaintiff is not entitled to discovery before a motion to dismiss, and dismissal under Rule 12(b)(6) helps protect defendants from expending resources on costly discovery for cases that will not survive summary judgment").

either Firstsource itself physically placed the calls or that a third party did. Yet, courts have found that such conclusory and equivocating allegations are "woefully insufficient to state a claim of **any** sort." *Maldonado-Rodriguez v. Citibank, N.A.,* 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013). Such is true when it comes to pleading TCPA claims, as the many authorities cited above and others all show.[8] Indeed, on the whole, Plaintiff's directly "[c]ontradictory allegations" above not only fail to state a plausible direct TCPA liability claim, but they also "are inherently implausible, and [thus] fail to comply with Rule 8, *Twombly*, and *Iqbal*" and cannot avoid dismissal at the pleadings stage in any federal case. *Hernandez v. Select Portfolio, Inc.,* 2015 WL 3914741, at *10 (C.D. Cal. June 25, 2015). And as one court aptly noted when dismissing a TCPA case on this basis under Rule 12(b)(6), "simply asserting a purported fact [like Plaintiff did] does not make it one, where there are no factual allegations to support the asserted conclusion." *Bank v. Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024). This Court should reach the same conclusions here.

Moreover, Plaintiff's Complaint is more notable for what facts it omits, rather than what few (if any) facts it contains, on this front. For example, Plaintiff noticeably does not allege, *inter alia*: (i) what phone numbers were used to call her; (ii) that Firstsource owns or uses any of those numbers; (iii) that she called any of those numbers back and reached Firstsource directly; or (iv) that Firstsource's name appeared on her caller ID for any call. Such unpled facts **might** have supported a plausible direct TCPA liability theory here, as other courts have found. *See, e.g., Murray*,

---

[8] *See also Bank v. Philips Elecs. N. Am. Corp.,* 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (holding plaintiff's allegations the calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct liability); *Abante Rooter*, 2018 WL 288055, at *4 (allegations plaintiff received a call from someone purportedly calling on behalf of the defendant and who identified defendant by name deemed insufficient for direct TCPA liability, without more); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *1-3 (N.D. Cal. Mar. 16, 2023) (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who [expressly] identified herself as working for" the defendant); *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (allegations calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, without more).

11

2015 WL 4204398, at *2 (dismissing where there were "no factual allegations in the complaint that Choice Energy had any active role or involvement in [physically] placing the [subject] calls" even though the plaintiff was allegedly informed the call was "from" the defendant); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *6 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where complaint lacked such details about the alleged communications); *Smith v. Direct Bldg. Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021) (same); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (dismissing where complaint was "silent as to the caller ID displayed during the Prerecorded Call"). That Plaintiff did not plead such facts, which should surely be within her knowledge if they exist at all, is telling and demonstrates that she just throwing darts at a proverbial dart board in this case, hoping one of them might hit on a theory of TCPA liability eventually. But that is not what federal pleading standards require, and it certainly does not save her Complaint from dismissal.

Lastly, in response to this Motion, Plaintiff may cite to *Harrison v. Humana, Inc.*, 2024 WL 4828737 (W.D. Ky. Nov. 19, 2024) (Stivers, C.J.) or *Jewell v. Magnolia Bank, Inc.*, 2024 WL 203972 (W.D. Ky. Jan. 17, 2024) (Jennings, J.), where the courts allowed TCPA claims to proceed to discovery. Both decisions are distinguishable, however, requiring a different result (a dismissal) here. For example, the courts did not focus on who "physically" placed the subject calls when considering the sufficiency of the direct TCPA liability allegations there (as other courts do).[9] Further, the plaintiffs in each case claimed to have spoken with persons who ***identified themselves***

---

[9] For example, the subject calls in both cases were allegedly transferred *to* the defendant. But by definition, that is not physically placing a call directly to the plaintiff. Rather, that is the defendant who is ***receiving*** a call from the caller, which is not direct TCPA liability as a matter of law, as myriad courts have recognized. *See, e.g., Cunningham v. Daybreak Solar Power*, 2023 WL 3985245, at *2 (dismissing on direct liability grounds where plaintiff eventually spoke to defendant's employee after an initial prerecorded message identifying a third party, holding such "facts failed to show whether [d]efendant physically initiated the phone call or whether the call was instead placed by a third-party telemarketer") (internal punctuation omitted). *See also Brown*, 2024 WL 3367536, at *3; *Bank*, 2024 WL 1332635, at *4; *Barnes*, 2023 WL 2592371, at *3 (all ruling similarly).

12

*as being representatives of the defendants*; thus the plaintiffs were arguably able to draw a straight line from the allegedly violative calls to the parties against whom liability was asserted. *Jewel*, 2024 WL 203972, at *1 & 3; *Harrison*, 2024 WL 4828737, at *1 & *3. Moreover, the plaintiffs in each alleged that the persons to whom they spoke, and who identified themselves as representatives of the named defendants, actually attempted to sell the defendants' services or products on these calls; and, the plaintiff in *Jewel* even alleged she was provided a callback number by one of these representatives and that she then subsequently received calls from the call back number given as being the alleged caller's direct line. *Jewel*, 2024 WL 203972, at *3; *Harrison*, 2024 WL 4838737, at *3. Plaintiff here is unable to, and does not, make any such allegations, instead relying on inconsistent conclusory allegations and speculation, thus mandating dismissal of the Complaint.

In sum, Plaintiff's equiovcating and conclusory allegations do not meet federal pleadings standards, nor do they sufficiently allege a plausible direct TCPA liability theory under the weight of applicable federal authority on this point. Thus, her Complaint should be dismissed on this basis.

### ii. Plaintiff Fails to Adequately Allege a Vicarious TCPA Liability Theory.

To the extent Plaintiff was attempting to plead vicarious liability for calls made by third parties, she fares no better. Indeed, vicarious liability cannot be casually pled, and courts uniformly require plaintiffs to meet a certain pleading threshold before dragging an otherwise innocent party into court over the conduct of another. Thus, vicarious liability requires a special "consensual relationship" between a principal and an agent. Restat. (3d) Agency § 1.01, cmt. c. As defined by the Sixth Circuit in a TCPA case, "[a]gency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." *Keating v. Peterson's Nelnet, LLC,* 615 F. App'x 365, 372 (6th Cir. 2015);

13

(quoting Restat. § 1.01). This requires pleading "more than mere passive permission; it involves request, instruction, or command." *Linlor v. Five9, Inc.*, 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017). And "[t]hough 'the precise details of the agency relationship need not be pleaded to survive a motion to dismiss [in a TCPA or any case], sufficient facts must be offered to support a reasonable inference that an agency relationship existed.'" *Meeks*, 2018 WL 1524067, at *5 (quoting *Kristensen v. Credit Payment Servs.*, 12 F. Supp. 3d 1292, 1301 (D. Nev. 2014)).

Moreover, in the TCPA context, federal courts have widely recognized that vicarious liability cannot attach without the "essential ingredient" of control. *Jones v. Royal Admin. Svcs., Inc.*, 887 F.3d 443, 450 (9th Cir. 2018). However, allegedly having <u>general</u> control over a third party agent is insufficient; instead, what matters in a TCPA case is whether there are sufficient facts plead supporting an inference that the defendant had control over the "manner and means" of that third party's call campaign <u>specifically</u>—*i.e.,* literally who to call, when to call, how to call, the content, etc. *See, e.g., In re: Monitronics Int'l, Inc., TCPA Litig.*, 223 F. Supp. 3d 514, 520 (N.D. W.Va. 2016), *aff'd sub nom. Hodgin v. UTC Fire & Sec. Americas Corp.*, 885 F.3d 243 (4th Cir. 2018) ("[I]n order to prove actual agency [for vicarious TCPA liability purposes], the plaintiff must show that the defendant controlled or had the right to control the purported agent and, more specifically, the manner and means of the solicitation campaign that was conducted."). *See also Cunningham v. Daybreak,* 2023 WL 3985245, at *3; *Doyle v. Matrix Warranty Sols., Inc.,* 2023 WL 4188313, at *4 (D.N.J. June 26, 2023); *Rogers*, 2023 WL 2646468, at *6; *Meeks*, 2018 WL 1524067, at *6 (all ruling similarly and dismissing TCPA claims under Rule 12(b)(6) on this basis).

Here, other than using a few legal buzzwords perhaps suggestive of agency—*i.e.*, that Firstsource "caused" someone else to "deliver" messages to her—Plaintiff pleads no facts whatsoever in her Complaint supporting an inference of "control" as is required As such, her

Complaint should also be dismissed on vicarious TCPA liability grounds. *See, e.g., Cunningham v. Health Plan Intermediaries,* 2021 WL 1946645, at *4 (dismissing, holding a plaintiff "must allege some factual predicate that gives rise to an inference of an agency relationship"); *Dobronski v. Tobias & Assocs., Inc.*, 2024 WL 1174553, at *3 (E.D. Mich. Mar. 18, 2024) (citing *Cunningham* and dismissing TCPA claims where plaintiff did not plead any facts supporting an agency theory); *Chambers v. Nationwide Mut. Ins. Co.,* 2020 WL 2475354, at *4 (N.D. Ohio May 13, 2020) (same).

\* \* \*

All told, because Plaintiff's Complaint fails to allege, with sufficient non-conclusory supporting facts, a plausible theory of direct or vicarious TCPA liability against Firstsource in this matter, her <u>entire</u> Complaint should be dismissed on these bases alone. *See Nelums and Tuso*, *supra*; *see also Katz v. CrossCountry Mortg., LLC,* 2022 WL 16950481, at *5 (N.D. Ohio Nov. 15, 2022) (dismissing where plaintiff "failed to allege direct or vicarious liability inasmuch as he has failed to identify the source of these calls" with sufficient factual support) (citations omitted).

### B. <u>Plaintiff Fails to Adequately Plead Use of an "Artificial or Prerecorded Voice."</u>

Plaintiff's Complaint further fails because it omits sufficient facts supporting a core element of any claim under Section 227(b) of the TCPA—*i.e.,* that the calls of which she complains involved use of an "artificial or prerecorded voice." *See also Ybarra v. Dish Network, L.L.C.,* 807 F.3d 635, 640 (5th Cir. 2015) ("To be liable under the 'artificial or prerecorded voice' section of the TCPA, … a defendant must make a call and an artificial or prerecorded voice must actually play.").

To survive dismissal on this front, Plaintiff's "[C]omplaint must include some factual allegations beyond 'the call had a prerecorded [or artificial] voice.'" *Smith v. Pro Custom Solar LLC*, 2021 WL 141336, at *3 (D.N.J. Jan. 15, 2021). Along these lines, federal courts across the country have consistently dismissed such claims under Rule 12(b)(6) where (as here) a plaintiff does little

15

more than parrot the statutory text or applicable case law, rather than plead facts supporting an inference that a call they received was actually "prerecorded," as opposed to a live person speaking. *See, e.g., Manopla*, 2020 WL 1975834, at *2 (dismissing § 227(b) claim where plaintiff failed to allege facts "regarding the tenor, nature, or circumstances of the alleged calls" and "merely proffer[ed] the content of the message and conclusory allege[d] that Defendant utilized a pre-recorded message"). These authorities, among many others,[10] show that a TCPA complaint seeking relief under Section 227(b) must contain some actual plausible facts (and not merely naked conclusions), and provide sufficient contextual details from which it can be inferred that such "voice" technology was actually used on a call, to adequately allege such a claim and avoid dismissal. Applying those authorities in this case shows that Plaintiff failed to sufficiently plead such facts.

As noted above, Plaintiff's Complaint is full of conclusory statements and regurgitations of applicable case law, trying to suggest that the "voice" on the messages was either "artificial or prerecorded"—though she never specifies which technology was used, despite those terms not being synonymous under the TCPA and involving vastly different technologies.[11] *See, e.g.,* Dkt. 1,

---

[10] *See, e.g., Curry,* 2015 WL 7015311, at *2-3 (citing *Aikens*, 2015 WL 5818911, at *4); *Aaronson,* 2019 WL 8953349, at *4; *Caruso v. Cavalry Portfolio Svcs.,* 2019 WL 4747679, at *4 (S.D. Cal. Sept. 30, 2019); *Winters v. Quicken Loans Inc.,* 2020 WL 5292002, at *4 (D. Ariz. Sept. 4, 2020); *Demarattes v. Enhanced Recovery Co., LLC*, 2022 WL 4121217, at *7 (E.D.N.Y. Sept. 9, 2022); *Allison v. Wells Fargo Bank, N.A.,* 2022 WL 10756885, at *3 (S.D. Cal. Oct. 18, 2022); *Laccinole v. Gulf Coast Collection Bureau, Inc.,* 2023 WL 157719, at *3 (D.R.I. Jan. 11, 2023); *Metzler,* 2023 WL 1779631, at *1, 6; *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5; *Moffet v. Everglades Coll., Inc.,* 2024 WL 1657195, at *3 (M.D. Fla. Mar. 4, 2024); *Davis v. Rockloans Marketplace, LLC*, 2024 WL 4896587, at *2 (S.D. Cal. Nov. 26, 2024) (all dismissing Secton 227(b) claims).

[11] *See* 47 U.S.C. §227(b)(1)(A)(iii) (restricting calls made using an "artificial or prerecorded voice"). An "artificial" voice is exactly what it sounds like—the voice of a person that does not exist (*e.g.,* artificial intelligence or a "soundboard")—that is used to interact with the called party. *See also Soundboard Ass'n v. FTC,* 888 F.3d 1261, 1263 (D.C. Cir. 2018) (discussing some common forms of artificial voice technology). In contrast, a "prerecorded" voice is far less advanced and is typically a live person making an audio recording (there is no interaction). A voice could perhaps be *both* in some instances—an artificial voice used to make an audio recording—but that would be very unusual and is not what Plaintiff alleges here. That her Complaint does not differentiate between the two forms of technology is further indicative of her flawed "either/or" pleading tactic.

¶¶ 18, 20, 28, 56, 57. Even if the Court takes these wholly conclusory allegations as true for present purposes, however, Plaintiff also suggests elsewhere in her Complaint that she ***spoke with the callers***—*i.e.*, she "***informed*** Defendant that Defendant was calling the wrong number and to stop calling." Dkt. 1, ¶ 35 (emphasis added). This contradictory allegation does not support (and indeed belies) any inference that any voice she heard was "artificial" or "prerecorded" rather than a live person speaking, as other courts have held. *See, e.g., Duran,* 878 F. Supp. 2d at 1316 ("On the four occasions Defendant made phone calls to Plaintiff, Plaintiff alleges that he spoke with Defendant's representatives, which negates a claim that the calls were made by an … artificial or prerecorded voice."); *Aaronson,* 2019 WL 8953349, at *3 ("[I]t is clear that there is no basis in the Complaint on which to conclude that the calls at issue used an artificial or prerecorded voice. In fact, the Complaint alleges that after plaintiff answered the calls, he was greeted by a live, human representative.").

Plaintiff further contradicts herself on this point by inconsistently alleging that the two messages were "generic" and "identical" on the one hand, and yet "intended for a person named Preston Oliver" and only "substantially identical" on the other. Dkt. 1, ¶¶ 30, 47, 56. She cannot have it both ways. A message asking for a *specific person by name* could hardly be considered "generic."[12] Further, "*substantially*" identical is not *exactly* identical (that is just a way of saying they were *similar*), and that could simply be the result of a live person reading from a script leaving routine voicemails. *See also Metzler*, 2023 WL 1779631, at *1, 6 (dismissing similar claim where "[t]he voicemail itself [as alleged] provide[d] no indication that it was prerecorded as opposed to

---

[12] That Plaintiff alleges that the "messages" were directly targeted at a specific person named "Preston Oliver" (*see* id. ¶ 47) belies any inference that they were artificial or prerecorded in any event. Indeed, it defies logic and common sense, and it would be unreasonable to infer, that any company would prerecord the specific first and last names of hundreds (or even thousands or hundreds of thousands) of individuals—apparently patients of a hospital, no less, which presents a host of other legal issues—so that it could later indiscriminately send out prerecorded voicemails (or make calls using the voice) *en masse*, as Plaintiff suggests happened here (*see id.* ¶¶ 38-42, 62, 65).

17

having been left by a caller reading from a script"); *Hicks*, 2020 WL 9261758, at *5 (rejecting similar allegations about a "generic" voicemail). But, again, such directly contradictory allegations like the foregoing are inherently implausible and do not remotely satisfy federal pleading standards. *See Hernandez, supra.* It is also axiomatic that this Court "'need not indulge in unreasonable inferences'" under Rule 12(b)(6). *Girgis v. Countrywide Home Loans, Inc.*, 733 F. Supp. 2d 835, 843 (N.D. Ohio 2010) (quoting *HMS Property Mgmt. Group Inc. v. Miller*, 69 F.3d 537 (Table), 1995 WL 641308 at *3 (6th Cir. Oct. 31, 1995)). *See also Bradley v. Jefferson Cnty. Pub. Sch.,* 598 F. Supp. 3d 552, 557 (W.D. Ky. 2022), *aff'd*, 88 F.4th 1190 (6th Cir. 2023) (noting that reviewing a complaint under Rule 12(b)(6) is a "'context-specific task that requires the reviewing court to draw on its judicial experience and common sense'") (quoting *Iqbal*, 556 U.S. at 679). This Court should decline Plaintiff's invitation to do so here, and dismiss her TCPA claim for these additional reasons.

**V.      CONCLUSION**

For all of the reasons above, the Court should dismiss Plaintiff's entire Complaint.

Dated: February 18, 2025

Respectfully submitted,

By: /s/Michael T. Leigh
Casey L. Hinkle
Michael T. Leigh
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:    (502) 416-1630
Email:  chinkle@kaplanjohnsonlaw.com
        mleigh@kaplanjohnsonlaw.com

*Counsel for Defendant*

18

## **CERTIFICATE OF SERVICE**

    I hereby certify that on February 18, 2025, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.

                                         /s/ Michael T. Leigh
                                         *Counsel for Defendant*