**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | | |
|---|---|---|
| Cynthia R. Barry, *on behalf of herself and others similarly situated*, | ) ) ) | Case No. 3:24-cv-00648-GNS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| Firstsource Solutions USA, LLC, | ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT FIRSTSOURCE**
**SOLUTIONS USA, LLC'S MOTION TO DISMISS**

## TABLE OF CONTENTS

Introduction ................................................................................................................. 1

Relevant Facts ............................................................................................................. 2

Legal Standard ............................................................................................................ 4

Argument .................................................................................................................... 5

I.    Ms. Barry states a claim under the TCPA ............................................................ 5

    A.   Ms. Barry adequately alleges the use of an artificial or prerecorded voice. ...................... 5

    B.   Ms. Barry adequately alleges that Firstsource directly made, or is responsible for, the calls at issue. .......................................................................................................... 9

II.   If this Court finds Ms. Barry's allegations insufficient, it should provide leave to amend. . 13

Conclusion ................................................................................................................ 13

## Introduction

This proposed class action under the Telephone Consumer Protection Act ("TCPA") arises from robocalls debt collection company Firstsource Solutions USA, LLC ("Firstsource") made to Cynthia R. Barry and others who are *not* its alleged debtors, who do not owe any money to Firstsource, and who did not provide consent. Of course, contempt for these ubiquitous robocalls is one of the few things we all share: "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2343 (2020). And calls like these, where Firstsource sought to collect money from people who did not owe it, are particularly pernicious.

Because Ms. Barry adequately alleges that Firstsource directly placed the calls at issue to her cellular telephone (or is otherwise responsible for them), in connection with which it used an artificial or prerecorded voice, she states a claim under 47 U.S.C. § 227(b)(1)(A)(iii).

Notwithstanding, Firstsource seeks dismissal by suggesting that Ms. Barry fails to adequately allege the use of an artificial or prerecorded voice or that Firstsource is responsible for the calls at issue. But in doing so, Firstsource largely ignores Ms. Barry's well-pleaded allegations.

Far from pleading legal conclusions, Ms. Barry details how she listened to Firstsource's prerecorded voice messages, how the tone and pattern of speech was consistent with a prerecorded voice and inconsistent with live speech, how the tone and speech pattern of part of the messages differed from the remainder of the messages, and how the messages were identical and of the same length. At the same time, Ms. Barry quotes from the messages themselves, which identify Firstsource as the caller and direct Ms. Barry to a website operated by Firstsource. Because Ms. Barry more than sufficiently pleads her TCPA claim, this Court should deny Firstsource's motion to dismiss in its entirety. ECF No. 14.

**Relevant Facts**

Ms. Barry is, and has been since approximately 2022, the sole and customary user of and subscriber to her cellular telephone number—(XXX) XXX-2217. *See* Plaintiff's Class Action Complaint, ECF No. 1, at ¶¶ 9, 11.

Firstsource placed calls to (XXX) XXX-2217 in January 2023 and February 2023. *Id*., ¶¶ 12-13. Firstsource used an artificial or prerecorded voice in connection with these calls. *Id*., ¶ 14.

Ms. Barry received and listened to the artificial or prerecorded voice messages Firstsource delivered, or caused to be delivered, to her cellular telephone. *Id*., ¶ 33. More specifically, on January 25, 2023, Firstsource placed or caused to be placed a call to telephone number (XXX) XXX-2217. *Id*., ¶ 15. In connection with this January 25, 2023 call, Firstsource delivered, or caused to be delivered, an artificial or prerecorded voice message. *Id*., ¶ 16.

The artificial or prerecorded voice message Firstsource delivered to Ms. Barry's cellular telephone on January 25, 2023 was more than 1:45 in length. *Id*., ¶ 17. The tone and speech pattern of the January 25, 2023 voice message is consistent with the use of an artificial or prerecorded voice, and not consistent with live speech. *Id*., ¶ 18.

The January 25, 2023 voice message began as follows: "Hello, this is Firstsource, calling on behalf of Brandon Regional Hospital, calling with an important message for Preston Oliver." *Id*., ¶ 19. The tone and speech pattern of "Preston Oliver" is different than the remainder of the January 25, 2023 prerecorded voice message. *Id*., ¶ 20.

The January 25, 2023 voice message directed the recipient to "screen.firstsource.com," which is a website operated by Firstsource. *Id*., ¶¶ 21-22.

As another example, on February 8, 2023, Firstsource placed a call to Ms. Barry's cellular telephone number. *Id*., ¶ 23. In connection with this February 8, 2023 call, Firstsource delivered an artificial or prerecorded voice message. *Id*., ¶ 24.

As was the January 25, 2023 message, the artificial or prerecorded voice message Firstsource delivered to Ms. Barry's cellular telephone on February 8, 2023 was more than 1:45 in length. *Id*., ¶ 25. The tone and speech pattern of the February 8, 2023 voice message is consistent with the use of an artificial or prerecorded voice, and not consistent with live speech. *Id*., ¶ 26.

The February 8, 2023 voice message began, just like the January 25, 2023 voice message, as follows: "Hello, this is Firstsource, calling on behalf of Brandon Regional Hospital, calling with an important message for Preston Oliver." *Id*., ¶ 27. The tone and speech pattern of "Preston Oliver" is different than the remainder of the February 8, 2023 prerecorded voice message. *Id*., ¶ 28.

Like the January 25, 2023 voice message, the February 8, 2023 voice message directed the recipient to visit "screen.firstsource.com". *Id*., ¶ 29.

The prerecorded voice messages Firstsource delivered to Ms. Barry's cellular telephone are identical or substantially identical, and referenced Firstsource by name. *Id*., ¶¶ 30, 56-57.

The subject prerecorded voice messages were generic—*i.e.*, Firstsource delivered identical messages to Ms. Barry's cellular telephone—and the messages do not sound like a normal live speech pattern. *Id*., ¶ 56. Given the generic nature of the messages and the uniform content of the messages, the messages Firstsource delivered, or caused to be delivered, to Ms. Barry's cellular telephone were prerecorded in nature, and Firstsource had knowledge that it was using an artificial or prerecorded voice in connection with the subject calls it placed to Ms. Barry. *Id*., ¶¶ 30, 56-57.

3

Separately, Ms. Barry answered at least one call Firstsource placed to her in 2023. *Id*., ¶ 34. Ms. Barry informed Firstsource that Firstsource was calling the wrong number and to stop calling. *Id*., ¶ 35. No matter, Firstsource continued to place calls, and deliver artificial or prerecorded voice messages, to Ms. Barry's cellular telephone number in 2023. *Id*., ¶ 36.

Of note, Ms. Barry does not, and at the time of the subject calls did not, have an account with Firstsource, nor has she ever had an account with, received services from, or been a patient of Brandon Regional Hospital. *Id*., ¶¶ 37-41. At bottom, Ms. Barry never provided Firstsource or Brandon Regional Hospital with consent to place calls to her cellular telephone with an artificial or prerecorded voice. *Id*., ¶¶ 43-46.

## Legal Standard

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), it is axiomatic that "[t]he complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff." *In re FCA US LLC Monostable Electronic Gearshift Litig.*, 280 F. Supp. 3d 975, 990 (E.D. Mich. 2017) (citing *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001)).

Stated succinctly:

When considering a Fed. R. Civ. P. 12(b)(6) motion, a court must construe the complaint in the light most favorable to the plaintiff. A court must also accept all of a plaintiff's allegations as true. Mere labels and conclusions, or a formulaic recitation of the elements of a cause of action's elements are insufficient. However, this standard is satisfied when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Harrison v. Humana, Inc.*, No. 3:24-cv-00262-GNS, 2024 WL 4828737, at *1 (W.D. Ky. Nov. 19, 2024) (Stivers, J.)[1] (denying motion to dismiss claims under the TCPA).

---

[1]    Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

**Argument**

**I.      Ms. Barry states a claim under the TCPA.**

"The TCPA is the product of public outrage over abusive telephone marketing practices."

*Dickson v. Direct Energy, LP*, 69 F.4th 338, 341 (6th Cir. 2023). "By the time it was enacted in

1991, companies had begun to use technology that could automatically dial telephone numbers

and deliver prerecorded voice messages to potential consumers en masse—reportedly to more than

18 million Americans each day." *Id.* "Consumers more generally criticized these robocalls as

invasions of privacy regardless of the content or the initiator of the message. Congress agreed."

*Id.*

> Ms. Barry alleges Firstsource violated 47 U.S.C. § 227(b)(1)(A)(iii), which provides:
>
> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) by using any automatic telephone dialing system or an artificial or prerecorded voice—
>
> *          *          *
>
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

47 U.S.C. § 227(b)(1)(A)(iii).

In short, this provision "prohibits making any call, to any telephone number, using any

automatic telephone dialing system or an artificial or prerecorded voice absent an emergency or

the recipient's prior express consent." *Dickson*, 69 F.4th at 341.

**A.  Ms. Barry adequately alleges the use of an artificial or prerecorded voice.**

In suggesting that Ms. Barry fails to adequately allege the use of an artificial or prerecorded

voice, Firstsource misconstrues the pleading standard under Rule 8(a)(2). Firstsource also ignores

the lion's share of Ms. Barry's allegations.

5

To start, allegations of the use of an artificial or prerecorded voice are allegations of fact, not legal conclusions. *See, e.g.*, *Vaccaro v. CVS Parm., Inc.*, No. 13-CV-174-IEG (RBB), 2013 WL 3776927, at *2 (S.D. Cal. July 16, 2013) (denying motion to dismiss TCPA claims and noting "[t]hat the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion."); *accord Bonoan v. Adobe, Inc.*, 19-cv-01068-RS (SK), 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019) ("The term 'artificial or prerecorded voice' does not call for a legal conclusion . . . . Determining whether a voice is artificial or prerecorded does not require legal analysis.").

So while "even a legal conclusion couched as a factual allegation is insufficient on its own because, however disguised, it remains a legal conclusion[,]" "[f]actual allegations do not cease to be factual even if they quote a statute's language." *Vaccaro*, 2013 WL 3776927, at *2 ("For instance, allegation of a telephone call remains factual even though the word 'call' is found in the TCPA."); *see also Mata v. Veros Credit, LLC*, No. SA CV 16-8-DOC (JCGx), 2017 WL 2644633, at *4 (C.D. Cal. Jan. 20, 2017) ("That the calls were made using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion.").

Here, Ms. Barry alleges that Firstsource placed calls to her cellular telephone number using an artificial or prerecorded voice. ECF No. 1, ¶¶ 14, 16-17, 24, 30-33, 36, 52, 55-57, 60, 62, 70, 91. These allegations are more than sufficient. *See, e.g.*, *Rahn v. Bank of Am., N.A.*, No. 1:15-cv-4485-ODE-JSA, 2016 WL 7325657, at *4 (N.D. Ga. June 26, 2016) ("When one receives a call, it is a clear-cut fact, easily discernible to any lay person, whether or not the recipient is speaking to a live human being, or is instead being subjected to a prerecorded message. . . . Thus, that Plaintiff states he received calls containing 'prerecordings' is a factual allegation for purposes of

the pleading standards, and not a bare legal conclusion. Accordingly, the allegation must be accepted as true, and therefore separately establishes the necessary element of this claim.").

Second, and far from "conclusory statements and regurgitations of applicable case law," ECF No. 14 at 17, Ms. Barry details why she knows the calls were prerecorded:

- Ms. Barry listened to the prerecorded voice messages Firstsource delivered to her cellular telephone. ECF No. 1, ¶ 33;

- The prerecorded voice messages Firstsource delivered were identical or substantially identical. *Id.*, ¶¶ 19, 27, 30, 56;

- The prerecorded voice messages Firstsource delivered were of the same duration. *Id.*, ¶¶ 17, 25;

- The tone and speech pattern of the voice messages were consistent with the use of an artificial or prerecorded voice, and not consistent with live speech. *Id.*, ¶¶ 18, 26, 56;

- The tone and speech pattern of part of the voice messages—the name of the person Firstsource was looking for—differed from the remainder of the message. *Id.*, ¶¶ 20, 28;[2]

- All of the prerecorded voice messages referenced "Preston Oliver." *Id.*, ¶¶ 19-20, 27-28, 32;[3] and

- The prerecorded messages were generic and contained uniform content. *Id.*, ¶¶ 56-57.[4]

---

[2]    Firstsource makes no effort to explain how a single message could utilize multiple different voices if it was not made with an artificial or prerecorded voice.

[3]    Firstsource claims the use of the alleged debtor's name cuts against the allegation that the messages are prerecorded. ECF No. 14 at 17 n.21. But this is not so. *See Greene v. Select Funding LLC*, No. 2:20-cv-07333-RGK-KS, 2021 WL 4926459, at *4 (C.D. Cal. Feb. 5, 2021) ("Defendant argues that because the caller specifically asked for 'Julian Greene,' the call was more personal, suggesting a non-recorded call. But automated messages are becoming more sophisticated. It is common to hear an automated message identify an individual by name.").

[4]    Contrary to Firstsource's suggestion, that Ms. Barry spoke to Firstsource and informed Firstsource that it was calling the wrong number does not negate that Firstsource placed calls to Ms. Barry with an artificial or prerecorded voice. To be sure, calling technology can recognize when a human answers and then transfer a call to a live operator. If no person answers, a prerecorded message can be left. Alternatively, that Firstsource may have placed a call to Ms. Barry with a live person has no bearing on different calls Firstsource placed to her with an artificial or prerecorded voice.

Taken together, these allegations are more than sufficient to plead the use of an artificial or prerecorded voice. *See, e.g.*, *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1249 (D.N.M. 2024) ("Plaintiff's allegations sufficiently draw the inference that a prerecorded voice was used. He states that 'on several occasion' the Jane Doe callers 'left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail,' which is sufficient to support an inference that Plaintiff received identical, prerecorded calls."); *Cabral v. Penske Truck Leasing Co. LP*, No. 1:23-cv-01316, 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024) ("Unlike cases dismissing TCPA claims because the plaintiff, 'has not pled any facts relative to an automatic telephone dialing system or to an artificial or prerecorded voice,' Mr. Cabral has made at least some factual statements supporting his allegation that Penske contacted him using a prerecorded message. . . . The Court therefore concludes that, at this early stage of the litigation, Mr. Cabral's allegations are sufficient for his TCPA claim to survive."); *Dudley v. Vision Solar, LLC*, No. 21-659, 2021 WL 3077557, at *3 (E.D. Pa. July 21, 2021) ("The Complaint therefore does not merely repeat the language of the TCPA, but instead provides a description, albeit minimal, of the calls' content that extends beyond the language of the statute. Drawing all reasonable inferences in Plaintiffs' favor, we find the description of the calls' options menu and 'computerized' voice sufficient to plausibly allege that the calls used an artificial or prerecorded voice."); *Greene*, 2021 WL 4926459, at *4 ("Plaintiff alleges that he knew that caller he spoke with on April 10 was a pre-recorded message based on the speaker's 'content, tone and inflection,' 'the generic content of the voice message,' and the speaker's cadence. (FAC ¶ 36). These allegations survive a motion to dismiss.").

It is not surprising, then, that the decisions Firstsource cites do not involve complaints with anywhere near the level of factual detail Ms. Barry provides. *See, e.g.*, *Manopla v. Sansone Jr.'s 66 Automall*, No. 17-16522 (FLW) (LHG), 2020 WL 1975834, at *2 (D.N.J. Jan. 10, 2020) ("As

presently alleged, Plaintiff's Complaint is devoid of facts from which the Court could reasonably infer that a pre-recorded message was utilized; in fact, Plaintiff's Complaint is bereft of any allegations regarding the tenor, nature, or circumstances of the alleged calls."); *Curry v. Synchrony Bank, N.A.*, No. 1:150CV0322-LG-RHW, 2015 WL 7015311, at *2 (S.D. Miss. Nov. 12, 2015) (alleging no facts other than that calls were "automated").

Finally, Firstsource's motion to dismiss is notable for what it omits: an actual denial from Firstsource that it used an artificial or prerecorded voice in connection with its calls to Ms. Barry. To that end, Ms. Barry produced copies of two of the prerecorded voice messages she received from Firstsource to Firstsource's counsel. To the extent Firstsource truly believes that the messages are not prerecorded or made with an artificial voice, it can say so through its reply. But if it chooses not to do so, the strong inference is that Ms. Barry's allegations regarding the use of an artificial or prerecorded voice are correct.

**B. Ms. Barry adequately alleges that Firstsource directly made, or is responsible for, the calls at issue.**

Ms. Barry adequately alleges that Firstsource made, or is responsible for, the artificial or prerecorded voice calls placed to her cellular telephone number. First, she alleges direct liability on the part of Firstsource because Firstsource itself placed the calls. *See* ECF No. 1, ¶¶ 12-14, 36, 51-56, 60. Ms. Barry also alleges that she answered a call from Firstsource and spoke to Firstsource, further evidencing that Firstsource itself placed the calls. *Id.*, ¶¶ 34-35. Were that not enough, Ms. Barry quotes from the prerecorded voice messages Firstsource delivered to her cellular telephone, wherein Firstsource states: "Hello, this is Firstsource[.]" *Id.*, ¶¶ 19, 27. Firstsource's messages also directed Ms. Barry to visit "screen.firstsource.com," which is a website operated by Firstsource. *Id.*, ¶¶ 21-22, 27, 29. Given these detailed allegations of direct liability, Ms. Barry adequately pleads that Firstsource placed the calls to her.

9

Firstsource's attacks on Ms. Barry's direct liability allegations bear no relationship to the facts she pleads in her complaint. Simply, Ms. Barry pleads that Firstsource itself placed the calls and buttresses those allegations with specific facts, such as that the messages stated they are from Firstsource, the messages directed Ms. Barry to a Firstsource website, and that she answered a call from Firstsource wherein the caller identified itself as Firstsource. Nothing more is required.[5] *See, e.g.*, *Bradshaw v. CHW Grp., Inc.*, --- F. Supp. 3d ----, 2025 WL 306783, at *3 (D.N.J. Jan. 24, 2025) ("After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is. So too as to the December 8 call. The caller allegedly introduced herself as 'Erica ... from [the Defendant].' *Id*. ¶ 70. Why then would it not be plausible to conclude that she was, in fact, 'Erica ... from [the Defendant]'?"); *Smith v. American-Amicable Life Ins. Co. of Tex.*, No. 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022) ("The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable.").

As one district court summarized in rejecting an argument identical to what Firstsource advances here:

---

[5]     Firstsource's cited authority is inapposite. For example, in *Brownlee v. Allstate Ins. Co.*, No. 21-cv-1428, 2021 WL 4306160, at *1 (N.D. Ill. Sept. 22, 2021), the court dismissed the plaintiff's claims without prejudice because a "plaintiff must allege in her complaint that defendant made each call that she seeks to hold it liable for." The court then noted that "[t]his defect can be easily remedied." *Id*. Here, on the other hand, Ms. Barry specifically alleges that Firstsource placed the calls at issue. And in *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 3:18-cv-00518, 2021 WL 1946645, at *2 (M.D. Tenn. May 14, 2021), the court dismissed TCPA claims where the complaint "d[id] not include allegations that [the defendant] took any steps to physically initiate a call." In sharp contrast here, Ms. Barry alleges that Firstsource placed the calls to her cellular telephone number. Likewise, in *Murray v. Choice Energy, LLC*, No. 1:15-cv-60, 2015 WL 4204398 (S.D. Ohio July 10, 2015), the plaintiff did not specifically allege that Choice Energy, LLC placed the calls at issue.

> CHW advances a variety of arguments as to why these counts should be dismissed. Several of these arguments can be quickly rejected, so the Court will address those weaker arguments first.
>
> CHW's weakest argument by far is that the complaint alleges insufficient facts to support a reasonable inference that CHW directly placed the calls at issue or had an agency relationship with some third party who placed these calls on its behalf. This is obviously wrong. Among other things, Mr. Katz's complaint alleges that CHW explicitly 'identified itself by name on several of the calls' to Mr. Katz, *see* Doc. 23, ¶ 54, and that, for example, one call began with a prerecorded message stating that "[t]his call is being placed on behalf of Choice Home Warranty for telemarketing purposes," *id.* at ¶ 56, that another call was from a live caller who identified himself as "Richard Kelly from CHW," id. at ¶ 57, and that another prerecorded call had a message stating "[h]ey, this is Jen from CHW," *id.* at ¶ 58 . . . . . The Court does not see what more could possibly be necessary or useful for supporting a reasonable inference at the pleading stage that CHW was, indeed, the entity ultimately responsible for placing these calls to Mr. Katz.

*Katz v. CHW Grp., Inc.*, No. 5:22-cv-5198, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023) (denying motion to dismiss TCPA claims).

At bottom, because Ms. Barry alleges that Firstsource placed the calls at issue—and supports that conclusion with specific factual allegations—she adequately alleges direct liability. *See Taylor v. Suntuity Solar Ltd. Liab. Co.*, No: 8:23-cv-00694-MSS-AEP, 2024 WL 964199, at *6 (M.D. Fla. Mar. 6, 2024) ("Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' . . . . Because the Court takes Plaintiff's allegations as true at this stage in the proceedings, dismissal for failure to state a claim on the grounds Defendant asserts is inappropriate.").

While this Court need not address it because Ms. Barry alleges direct liability on the part of Firstsource, in the alternative, Ms. Barry alleges that Firstsource caused the at-issue calls to be made. That is, to the extent Firstsource hired a third-party vendor to place the calls at issue on its behalf, Firstsource caused the calls to be made and is responsible for its agent's conduct. As this Court explained in *Harrison*, "[e]xplicit pleading of an agency relationship is not required." 2024

WL 4828737, at *3 (citing *Eldridge v. Cabela's Inc.*, No. 3:16-CV-536-DJH, 2017 WL 4364205, at *5 (W.D. Ky. Sept. 29, 2017)).[6] Nonetheless, because the at-issue voice messages state that they are from Firstsource, direct Ms. Barry to a Firstsource website, and because Ms. Barry answered a call and spoke to someone who identified themselves as being from Firstsource, ECF No. 1, ¶¶ 19, 21-22, 27, 29, 34-35, Ms. Barry's allegations demonstrate vicarious liability both based on apparent authority and actual authority. *See Harrison*, 2024 WL 4828737 ("While Humana is critical of Harrison's allegations, it would otherwise be impossible for her to know of the alleged caller's relationship with Humana—if any—without discovery."); *Jewell v. Magnolia Bank, Inc.*, No. 3:23-CV-78-RGJ, 2024 WL 203972 (W.D. Ky. Jan. 17, 2024) (Jennings, J.) (denying motion to dismiss TCPA claims).

Most of the authority cited by Firstsource involved marketing claims under a different subsection of the TCPA, and is therefore inapposite. This is notable because lead generators will often place marketing calls on behalf of other companies and then transfer the calls once a recipient answers, as opposed to placing calls directly. *See, e.g.*, *Bennett v. Celtic Ins. Co.*, No. 20-cv-06172, 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("a defendant 'generally does not [physically] initiate calls [under the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf"). Here, on the other hand, Firstsource is a collection company that places calls to collect debts and service accounts.

For this reason, the court in *Adam v. CHW Grp., Inc.* had little difficulty finding the same cases cited by Firstsource here to be unavailing, and denied the defendant's motion to dismiss. No. 21-cv-19-LRR, 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021) ("Additionally, the court notes

---

[6]     Firstsource's proffered authority on this point is from outside this jurisdiction and therefore inapposite. *See* ECF No. 14 at 14.

that none of the cases cited by CHW in its brief support its argument that the First Amended Complaint lacks sufficient allegations that CHW actually initiated the phone calls to Adam. Indeed, each of the cases cited by CHW, *Sheski, Childress, Hirsch* and *Frank*, all dealt with third parties making the telephone calls, which is not the case here, where Adam alleges that CHW made the calls. The other case cited by CHW, *Aaronson*, is distinguishable because, in *Aaronson*, the plaintiff made no allegations that the defendant placed the calls at issue.").[7]

## II.    If this Court finds Ms. Barry's allegations insufficient, it should provide leave to amend.

Should this Court find any of Ms. Barry's allegations lacking, it should provide leave to amend. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). This is particularly so here where Firstsource has not filed an answer and where Ms. Barry has not previously amended her complaint.

**Conclusion**

Ms. Barry more than adequately alleges that Firstsource placed, or is otherwise responsible for, calls to her cellular telephone with an artificial or prerecorded voice. As a result, she adequately alleges her claim under 47 U.S.C. § 227(b)(1)(A)(iii), and this Court should deny Firstsource's motion to dismiss in its entirety.

DATED: March 11, 2025                    *s/ Michael L. Greenwald*
                                         Michael L. Greenwald (*pro hac vice*)
                                         GREENWALD DAVIDSON RADBIL PLLC
                                         5550 Glades Road, Suite 500
                                         Boca Raton, FL 33431
                                         Tel:  (561) 826-5477
                                         mgreenwald@gdrlawfirm.com

                                         *Attorneys for Ms. Barry and the Proposed Class*

---

[7]     For the same reasons, Firstsource's reliance on *Sheski*, *Childress*, *Frank*, and *Aaronson* is misplaced. ECF No. 14 at 4, 7-8, 16-17.