**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

| | |
|---|---|
| **CYNTHIA R. BARRY, on behalf of herself and others similarly situated,**<br><br>Plaintiff,<br><br>v.<br><br>**FIRSTSOURCE SOLUTIONS USA, LLC,**<br><br>Defendant. | Case No. 3:24-cv-00648-GNS |

**DEFENDANT'S REPLY IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

**I.      INTRODUCTION**

Put simply, Plaintiff's Opposition (Dkt. 15) to Firstsource's Motion to Dismiss (Dkt. 14, "Motion") fails to refute the well-supported grounds for dispositive relief presented in the Motion. Indeed, in the apparent absence of supporting facts, reasoned analysis, or applicable legal authority, Plaintiff mostly deflects rather than attempts to address the issues raised in the Motion. Plaintiff does this by, *inter alia*, (i) ignoring key arguments in the Motion, (ii) misconstruing several of Firstsource's cited authorities while ignoring the balance, (iii) citing readily-distinguishable outlier decisions, (iv) improperly relying on "facts" that are not alleged in her Complaint (*see* Dkt. 1), and (v) otherwise advocating that this Court rule differently here than the majority of federal courts have when dismissing similarly-defective TCPA complaints at the pleadings stage. At bottom, Plaintiff's Opposition invites this Court to subject Firstsource to costly class discovery in this putative nationwide class action based on conclusory allegations and implausible contradictions, not actual plausible facts. The Court should decline this invitation. That is not what federal pleadings standards permit. Nor is that why the TCPA was enacted in the first place. The TCPA was designed to protect consumers from unscrupulous telemarketers, not as a money-making vehicle for plaintiffs' sides seeking quick profits through ill-pled TCPA claims. For the reasons discussed therein and below, the Motion should be granted and Plaintiff's Complaint should be dismissed.

**II.     ARGUMENT**

**A.      Plaintiff Fails to Plausibly Allege a Direct TCPA Liability Theory.**

Plaintiff's Opposition takes Firstsource's arguments out of order, focusing first on the "artificial or prerecorded voice" element of her claim. S*ee* Dkt. 15 at 5-9. When Plaintiff finally gets around to addressing the critical threshold issue of her failure to adequately plead a theory of TCPA liability (*i.e.*, direct or vicarious liability) in this case (*see* Dkt. 14 at 7-14), her arguments fall flat.

1

As detailed in the Motion, to properly allege a direct TCPA liability theory, Plaintiff must plead sufficient non-conclusory facts supporting a plausible inference that Firstsource <u>itself</u>—not a third party—<u>physically</u> placed <u>each</u> phone call at issue <u>directly</u> to her. *See* Dkt. 14 at 7-13 (collecting cases, including *inter alia Lucas*, *Cunningham v. Health Plan Intermediaries*, *Brownlee*, *Bennett*, *Murray*, *Aaronson*). *See also In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013) ("[M]erely having some role, however minor, in the causal chain that results in the making of a telephone call" is insufficient for direct TCPA liability.). But it is <u>not</u> enough, standing alone, to merely allege that a defendant's name was mentioned during a call or that the call was "from" the defendant. *See* Dkt. 14 at 8-9, 11 n.8 (citing, *inter* alia, *Frank*, *Murray*, *Belleville*, *Katz*, *Metzler*, *Woodard, Abante Rooter, Barnes*). *See also Cunningham v. Daybreak Solar Power, LLC,* 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (ruling similarly). Similarly, taking an equivocating "either/or" pleading approach and concluding the "defendant and/or its agents" placed the subject calls—like Plaintiff <u>repeatedly</u> does throughout her Complaint[1]—is, without more, insufficient to allege a direct TCPA liability theory. *See* Dkt. 14 at 9, 11, n.8 (citing *Brown*, *Dobronski, Bank, Doyle*). *See also Bank v. Philips Elecs. N. Am. Corp.*, 2015 WL 1650926, at *2 (E.D.N.Y. Apr. 14, 2015) (allegations calls were "made by, or on behalf of, or with the authorization of, an authorized dealer of [defendant]" were "too conclusory to state a plausible claim" for direct liability).

Plaintiff's conclusory and equivocal allegations that "Firstsource directly made, or is responsible for, the calls at issue" (Dkt. 15 at 9) are simply <u>not</u> sufficient to survive a Rule 12(b)(6) motion. *See also Belleville v. Fla. Insur. Servs, Inc.*, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part on other grounds,* 2024 WL 2794108 (May 31, 2024) (recommending dismissal where plaintiff alleged "in conclusory fashion that

---

[1]*See, e.g.,* Dkt. 1, ¶¶ 3, 4, 15, 16, 17, 19, 23, 24, 25, 27, 29-33, 52, 57, 58, 62, 63, 91.

2

[d]efendant was directly involved in making" the subject calls without sufficient factual support, even though some callers allegedly stated the defendant's name).

The foregoing decisions make perfect sense, and are consistent with how federal district courts across the country have evaluated the facial sufficiency of TCPA claims at the pleadings stage for decades. Indeed, if all it took to allege a TCPA liability theory was for a caller to state the name of a company, there would be no need to distinguish between direct and vicarious liability theories in a complaint, and no TCPA case would ever be dismissed under Rule 12(b)(6). Such is plainly not the law, as the many authorities cited in the Motion and herein show.

As Plaintiff suggests, one could easily ask at this point how a TCPA plaintiff is supposed to know who physically called them without the benefit of discovery? *See* Dkt. 15 at 12 (citing *Harrison*). The answer is two-fold. First, as a matter of black letter federal law, plaintiffs are not entitled to discovery at the pleadings stage, and must plausibly allege a TCPA liability theory without it. *See* Dkt. 14 at 9-10 (citing *Hurley*, *Hyatt*, *Kolley*). *See also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 559 (2007) (emphasizing the importance of the requirement of plausibility at the motion to dismiss stage, in part because "the threat of discovery expense will push cost-conscious defendants to settle even anemic cases before reaching" summary judgment or trial). Second, a plaintiff could do a lot of simple things to quickly determine who physically called them without discovery—for example, call the number back, ask a caller who their employer is, check their caller ID, or just run a simple Google search to confirm who owns or uses the number. Such facts might support a direct TCPA liability theory, if pled. *See* Dkt. 14 at 11-12 (citing *Murray*, *Rogers*, *Smith*, and *Bank*). Plaintiff alleges no such facts here, and she does not even address this point in her Opposition, thereby conceding it. *See, e.g., Bradley v. Jefferson Cnty. Pub. Sch.,* 598 F. Supp. 3d 552, 566 (W.D. Ky. 2022), *aff'd,* 88 F.4th 1190 (6th Cir. 2023) (deeming plaintiff had conceded

3

an issue and abandoned the claim by not responding to an argument made in a Rule 12(b)(6) motion to dismiss) (citing, *inter alia, Doe v. Bredesen*, 507 F.3d 998, 1007-08 (6th Cir. 2007)).

Plaintiff's Opposition presents no compelling reason for this Court to depart from these well-established pleading standards and, as further discussed below, the cases relied upon by the Plaintiff are readily distinguishable outlier decisions. Worse, Plaintiff does not acknowledge (let alone try to reconcile) the many directly contradictory, and thus inherently implausible, allegations in her Complaint suggesting that **unidentified third parties** placed the subject calls, which myriad courts have found insufficient to support a TCPA liability theory. *See* Dkt. 14 at 10-11 (citing, *inter alia*, *Hernandez*). By failing to address this point, Plaintiff has conceded it, as well. *See Bradley, supra.*

Rather, Plaintiff begins her counterargument on this issue by recasting some allegations in her Complaint, suggesting she has pled facts in support of a direct liability theory that do not exist. This strategy fails. For example, Plaintiff argues "she alleges direct liability on the part of Firstsource because Firstsource itself placed the calls." Dkt. 15 at 9 (citing Dkt. 1, ¶¶ 12-14, 36, 51-56, 60). Plaintiff also argues the Complaint "alleges that she answered a call from Firstsource and spoke to Firstsource, further evidencing that Firstsource itself placed the calls." Dkt. 15 at 9 (citing Dkt. 1, ¶¶ 34-35). Yet, these paragraphs merely reflect naked conclusions parroting the statute and case law—stating that "Defendant placed," "delivered," "caused to be placed," or "caused to be delivered" (the latter two meaning that a third party made) the subject calls or messages or the like—without supporting facts, which does not meet federal pleading standards. And none supports an inference that Firstsource itself physically placed either call[2] directly to her, which is the touchstone of direct TCPA liability and must be pled to avoid dismissal here. *See also Lucas v. Telemarketer Calling from*

---

[2] Plaintiff's Opposition seemingly suggests there are three calls at issue in this case (two supposedly "prerecorded voice message" calls and one live call that she answered). *See* Dkt. 15 at 3-4, 9-10. Her Complaint only discusses two, one of which she answered. *See* Dkt. 1, ¶¶ 15, 23, 34, 35.

*(407) 476-5680*, 2019 WL 3021233, at *5-6 (6th Cir. May 29, 2019) (recognizing pleading direct TCPA liability under Rule 12(b)(6) requires plausible supporting facts demonstrating the defendant itself physically placed the subject calls); Dkt. 14 at 8 (citing *Woodard v. Health Ins. All.,* 2024 WL 942629, at *3 (N.D. Ill. Mar. 5, 2024) (holding all "TCPA actions must allege some facts which are distinguishable from the statutory language of the TCPA itself to state a claim and survive dismissal" under Rule 12(b)(6)) and *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019) (holding "[m]erely alleging that [a defendant or the defendant's agent] 'made' or 'initiated' [a] call" without factual support "is not sufficient to allege a [direct] TCPA [liability] claim")).[3] In any event, it is axiomatic Plaintiff cannot amend her deflective pleading through briefing in response to a dispositive motion. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 483 (6th Cir. 2020). The Court should therefore reject these improper arguments on their face.

Beyond the foregoing, Plaintiff relies heavily on her allegations that the messages stated "This is Firstsource" and provided a link to Firstsource's website, proclaiming that "[n]othing more is required" to allege a direct TCPA liability theory. *See* Dkt. 15 at 10 (citing *Bradshaw* and *Smith*). The many well-reasoned authorities cited in the Motion and herein demonstrate that she is wrong, and that the alleged content of a call alone is not dispositive on this issue. *See*, *e.g., Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018) (finding no direct liability, even though at-issue text identified defendant by name and contained a link to its website). Why courts take this approach to evaluating direct TCPA liability allegations is in recognition that companies often hire third parties to communicate on their behalf. *See, e.g., Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017) (dismissing, holding "merely offering a good or service for sale does not mean that a retailer [physically] initiates the marketing calls for that product"

---

[3] Plaintiff conceding in her Opposition (as she already did in her Complaint) that she "spoke" with the callers further undermines her arguments that the subject calls were "prerecorded."

5

for direct TCPA liability). Such can particularly be true in cases involving purported "prerecorded voice" messages, as Plaintiff alleges here, which can be transmitted by anyone. *Cf. Garvey v. Citizens for Rauner, Inc.*, 2020 WL 13512715, at *3 (N.D. Ill. Sept. 3, 2020) (declining to dismiss on vicarious TCPA liability grounds where plaintiff sufficiently pled the defendant was in a common law agency relationship with the party that initiated prerecorded voice call). For example, a call stating it is "from Amazon" does not mean that Amazon itself physically placed it for direct TCPA liability purposes, and logically such a call would identify Amazon if a third party was hired to make it for Amazon. Rather, that call may have originated from Amazon indirectly in a technical sense, but a third party placing a call on behalf of a defendant is not grounds for **direct** TCPA liability, as a matter of law. *In re Rules and Regs. Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 (Jul. 10, 2015) (there must be a "direct connection between a person or entity and the making of a call" for direct liability to attach).

Regardless, Plaintiff's reliance on *Bradshaw* and *Smith* is misplaced. Indeed, the holding in *Bradshaw v. CHW Grp., Inc.*, 2025 WL 306783 (D.N.J. Jan. 24, 2025), stands in contrast to the vast weight of applicable authority on the accepted standards for pleading direct TCPA liability. In fact, that court did not even discuss (let alone properly apply) those established standards in its opinion—*i.e.,* that the plaintiff needed to allege, with supporting facts (not bald conclusions), that the defendant itself "physically" placed each of the subject calls directly. For this reason alone, *Bradshaw* has zero persuasive value here. Moreover, the *Bradshaw* court only acknowledged that "at first glance" the plaintiff's argument that the caller identified the defendant "seem[s]" like a basis for attributing the call to the defendant. *Id.* at *2. At the same time, the court also commented that "dishonesty about one's identity [over the phone] is at least somewhat common—and therefore, it will not always make sense to conclude that the person on the other end of the line is who they say they are." *Id*. at *3. In other words, even the *Bradshaw* court seemingly acknowledged that the mere

6

content of a call alone is an insufficient basis on which to infer direct TCPA liability (which is what most courts have found). But crucially, the court ultimately relied on neither of these theories and, instead, relied on other factual allegations pled in that case (which are not pled here) to conclude that the defendant indeed placed the calls at issue—including that the plaintiff had affirmatively reached out to the defendant and spoke to an employee there. *Id*. at *3. Here, Plaintiff's Complaint does not allege this; at best, it avers in conclusory fashion and with no requisite factual support that "Plaintiff informed Defendant that Defendant was calling the wrong number and to stop calling." Dkt. 1, ¶ 35.[4] Thus, even if *Bradshaw* were well-reasoned (and it is not), it is inapplicable here.

*Smith* is also of no moment. There, the court misapplied and conflated the standards for pleading "traceability" for Article III standing purposes under Rule 12(b)(1), where an alleged indirect connection to a call might suffice to show standing and avoid a dismissal in some cases, with the more precise standards for pleading TCPA liability theories under Rule 12(b)(6), where an alleged indirect connection is not enough to plausibly allege a direct TCPA liability theory, as discussed in the Motion and above. *See Smith v. v. Am.-Amicable Life Ins. Co.*, 2022 WL 1003762, at *1–2 (E.D. Pa. Apr. 4, 2022). These are distinct legal concepts with different pleading requirements, as other district courts have correctly recognized when dismissing on this basis. *See, e.g., Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021), *report and rec. adopted,* 2021 WL 1884671 (May 11, 2021) (call deemed indirectly "traceable" to defendant for Article III standing but dismissing for failure to allege TCPA liability under Rule 12(b)(6), holding: "while the allegations against GoHealth may not be enough to eventually establish [direct or vicarious] liability on the part of GoHealth …, they suffice[d] to allege that plaintiff's injury is traceable to the defendant") (internal

---

[4] Again, it is unclear whether Plaintiff is alleging a third call here. But if so, Plaintiff's attempt to connect Firstsource to this call is even more attenuated. There is no allegation that this call in which she interacted with the caller was from the same number as the other two (allegedly prerecorded) calls. Plaintiff does not even provide the number used for any caller.

7

citations omitted). Thus, *Smith* was wrongly-decided and should carry no weight here.

The other decisions cited by Plaintiff on this front similarly miss the mark. *See* Dkt. 15 at 11-13 (citing *Katz*, *Taylor, Adam*). For example, like in *Bradshaw*, the court in *Katz v. CHW Grp., Inc.*, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023), also did not discuss the accepted standards for pleading direct TCPA liability in its decision; and it certainly did not follow those standards when it incorrectly credited only the alleged content of the subject calls and the plaintiff's conclusory allegations (indeed, the "entity ultimately responsible" for a call is not the same thing as physically placing a call). Therefore, *Katz* likewise was wrongly-decided. In *Taylor v. Suntuity Solar LLC*, 2024 WL 964199, at *1-6 (M.D. Fla. Mar. 6, 2024), the court also incorrectly credited the alleged content of the subject calls, but that plaintiff also alleged that: (a) the only two calls at issue both originated from the same number, and (b) she received an email from "a call center agent of the Defendant" immediately following the second call. But Plaintiff alleges no such facts in this case.

The *Adam* opinion is probably the worst of the bunch, as that court apparently misinterpreted the defendant's cited authorities on this issue—*i.e., Aaronson*, *Childress*, *Frank* and *Sheski*, all of which are cited in Firstsource's Motion here—and incorrectly held that those plaintiffs "made no allegations that the defendant placed the calls at issue." *Adam v. CHW Grp., Inc.,* 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021)). In reality, the plaintiffs in each of those cases alleged, in a conclusory and equivocating fashion, that <u>either</u> the named defendants physically initiated (or were so involved as to be deemed to have physically initiated) the at-issue calls <u>and/or</u> that third parties did, which was deemed insufficient.[5] That is just like what Plaintiff did here. *See, e.g.,* Dkt. 1, ¶¶ 3, 4, 15, 16, 17, 19, 23, 24, 25, 27, 29-33, 52, 57, 58, 62, 63, 91. The result should be the same here.

---

[5] *See Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Childress v. Liberty Mut. Ins. Co.,* 2018 WL 4684209, at *3 (D.N.M. Sept. 28, 2018); *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2–3 (E.D. Wash. Oct. 1, 2019); *Sheski v. Shopify,* 2020 WL 2474421, at *2–4 (N.D. Cal. May 13, 2020). All of these cases were directly on-point in *Adam* too.

Finally, beyond urging the Court to apply the *Adam* court's faulty reading of *Aaronson*, *Childress*, *Frank* and *Sheski* (*see* Dkt. 15 at 13, n.7), Plaintiff's Opposition addresses only three of the many other on-point decisions cited in Firstsource's Motion on this issue, albeit via a perfunctory footnote with no meaningful analysis (*see id.* at 10, n.5 (discussing *Brownlee*, *Cunningham*, *Murray*)), while ignoring the balance. However, Plaintiff misconstrues or misapplies the holdings in those decisions, too. For example, that the *Brownlee* court found similarly-defective allegations to be insufficient to allege direct liability and allowed amendment just underscores why the Motion should be granted. Her Complaint has the same fatal defect. And like in *Cunningham* and *Murray*, Plaintiff does not allege any facts supporting a plausible inference that Firstsource itself took any steps to physically place either of the subject calls directly to her; and as discussed above she even pleads scores of directly contradictory facts precluding any such inference.

In sum, Plaintiff has not plausibly alleged a direct TCPA liability theory under the weight of applicable federal authority. Nothing in her Opposition supports a contrary result in this case.

### B. Plaintiff Fails to Plausibly Allege a Vicarious TCPA Liability Theory.

As to Firstsource's arguments on her failure to plead a vicarious TCPA liability theory (*see* Dkt. 14 at 13-15), Plaintiff cites to *Harrison* and *Jewell*, but does not provide any meaningful analysis of those two decisions; and, instead, she invites this Court to blindly apply those decisions to her claim, arguing that her "allegations demonstrate vicarious liability both based on apparent authority and actual authority." Dkt. 15 at 12. This argument is unavailing for several reasons.

Anticipating Plaintiff might cite to them, the Motion already discusses at length how *Harrison* and *Jewell* are distinguishable from and inapposite in this case. *See* Dkt. 14 at 12-13. Plaintiff's Opposition tellingly ignores this. Nevertheless, in accordance with federal pleading standards, one cannot simply conclude their way into a vicarious TCPA liability theory and, instead,

9

must plead some plausible facts supporting a reasonable inference that a common law agency relationship existed. *See* Dkt. 14 at 13-14 (citing *Meeks* and *Kristensen*). Further, the well-accepted touchstone of a common law "actual" agency relationship in the TCPA context, as required for vicarious liability, is the alleged principal having specific "control" over the "manner and means" of call campaign conducted by a third party caller—*i.e.,* literally how to call, when, who, etc. *See id.* at 14 (citing *Monitronics*, *Cunningham v. Daybreak*, *Doyle v. Matrix*, *Rogers v. Assurance*, *Meeks*); *see also Fabricant v. Elavon, Inc.*, 2020 WL 11884505, at *4 (C.D. Cal. Aug. 25, 2020); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *5 (S.D. Ohio July 10, 2015). Plaintiff's Opposition does not dispute this, and her Complaint lacks any such facts. In fact, the word "control" is not even used.

Additionally, an apparent authority agency theory only arises from "'proof of something said or done by the [alleged principal], on which [the plaintiff] reasonably relied' to the plaintiff's detriment." *Linlor v. Five9, Inc.,* 2017 WL 5885671, at *3 (S.D. Cal. Nov. 29, 2017) (quoting *Thomas v. Taco Bell Corp.,* 582 F. App'x 678, 679 (9th Cir. 2014)) (punctuation omitted, alterations original). *Accord Paintsville Hosp. Co. v. Rose*, 683 S.W.2d 255, 257 (Ky. 1985). In this regard, Plaintiff pleads no facts in her Complaint about any statement or act <u>by Firstsource</u> upon which <u>she</u> reasonably relied, let alone relied on to her <u>detriment</u>, which further supports dismissal. *See, e.g., Sapan v. Shore Cap. Corp.*, 2024 WL 4002622, at *6 (C.D. Cal. Aug. 23, 2024) (dismissing TCPA claim on this basis, and others, where the plaintiff did "not allege that any principal made any statement or took any action to indicate that anyone had authority as the principal's agent."); *Fabricant*, 2020 WL 11884505, at *5 (dismissing TCPA claim, and ruling similarly); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, 2021 WL 1946645, at *3 (M.D. Tenn. May 14, 2021) (same).

Finally, Plaintiff suggests she was merely pleading "in the alternative" in her Complaint "that Firstsource caused the at-issue calls to be made. That is, to the extent Firstsource hired a third-party

10

vendor to place the calls at issue on its behalf, Firstsource caused the calls to be made and is responsible for its agent's conduct." Dkt. 15 at 11. At best, this just shows that Plaintiff does not know who actually called her, and is just throwing darts at a proverbial dartboard, hoping they hit a TCPA liability theory eventually. In any event, "pleading in the alternative" requires pleading actual <u>facts</u> supporting an alternative theory of liability, not taking an "either/or" pleading approach like what Plaintiff did here. *See, e.g., Kwan v. Schlein*, 246 F.R.D. 447, 451 (S.D.N.Y. 2007) ("[E]ach alternative theory [under Rule 8] must itself be sufficient to state a claim, and factual allegations [supporting it] must be enough to raise a right to relief above the speculative level.") (internal quotation marks omitted); *Kaye v. Unum Grp.,* 2010 WL 3790107, at *3 (E.D. Mich. Sept. 22, 2010) ("'Rule 8(d) does not excuse parties from pleading facts to support each of the alternative legal theories they are pressing[.]'") (quoting *Johns v. Blue Cross Blue Shield of Mich.*, 2009 WL 646636, at *5 (E.D. Mich. Mar. 10, 2009)). In the present case, Plaintiff's Opposition does not show where any such facts supporting an alternative theory exist in her Complaint, since none do.

The bottom line is that, contrary to what Plaintiff advocates in her brief (*see* Dkt. 15 at 9-13), it is well-settled that a TCPA plaintiff cannot simply allege in a conclusory fashion that the defendant "directly made or is responsible for" the calls at issue and avoid dismissal under Rule 12(b)(6). Courts require much more for pleading a TCPA liability theory, and the legal standard that Plaintiff asks this Court to apply is simply <u>not</u> the law, as the many decisions in the Motion and above show. Thus, her Complaint should be dismissed in its entirety for failing to state a TCPA liability theory.

### C.     **<u>Plaintiff Fails to Plausibly Allege Use of An Artificial or Prerecorded Voice.</u>**

Though the foregoing fatal pleading defects alone warrant a complete dismissal, Plaintiff fares no better on the balance of her counterarguments as to whether she has adequately pled use of an "artificial" or "prerecorded" voice, should the Court reach them, for several reasons:

11

**First**, rather than point to the factual allegations in her pleading or cite applicable supporting case law, Plaintiff employs a footnote to gloss over the directly contradictory and thus inherently implausible allegation in her Complaint, as discussed in the Motion (*see* Dkt. 14 at 7), suggesting she ***spoke with*** the callers. *See* Dkt. 15 at 7, n.4. Yet, none of the speculative "factual" allegations in this footnote are pled in her Complaint,[6] and consequently this Court should reject this argument out of hand, too. *See Bates, supra.* Nevertheless, as the Motion argues, this contradictory allegation alone belies, if not destroys, any possible inference that any voice she heard was "artificial" or "prerecorded" rather than a live person speaking on those calls, which also warrants a complete dismissal of her Complaint. *See* Dkt. 14 at 17 (citing *Duran* and *Aaronson*). That the Opposition makes no effort to distinguish, let alone even mention, *Duran* or *Aaronson* is telling.

**Second**, Plaintiff's scant cited authorities on this front are distinguishable. *See* Dkt. 15 at 6, 8 (citing various cases). For starters, the holdings in each case stand in stark contrast to the weight of applicable authority cited in the Motion, showing that TCPA plaintiffs must provide specific contextual details and cannot just parrot the statutory text and avoid a dismissal on this basis. *See* Dkt. 14 at 15-16 & n.10 (collecting cases). Moreover, each case she cites has no persuasive value here. For example, the *Bonoan* and *Rahn* courts did not cite any case law for their holdings on prerecorded voice use. *See Rahn v. Bank of Am., N.A.,* 2016 WL 7325657, at *4 (N.D. Ga. June 24, 2016); *Bonoan v. Adobe, Inc.,* 2019 WL 5690631, at *1 (N.D. Cal. Oct. 29, 2019). And *Bonoan* is

---

[6] Plaintiff includes other facts in this part of her Opposition that are not found in the Complaint. For example, Plaintiff's Complaint does not allege that both "messages" were the exact "same duration" as Plaintiff implies in her brief. Dkt. 15 at 7. Rather, she at best concludes that they were "more than 1:45 in length." Dkt. 1, ¶¶ 17, 25. How much "more" is not provided. Plaintiff also asserts that "Firstsource makes no effort to explain how a single message could utilize multiple different voices if it was not made with an artificial or prerecorded voice." Dkt. 15 at 7, n.2. However, the Complaint says nothing about "multiple different voices" and, at best avers, that the "tone and speech pattern" when the name "Preston Oliver" was stated was different than the rest of the message. Dkt. 1, ¶¶ 20, 28. That could simply be the result of a person reading from a script.

12

not even in the context of a Rule 12(b)(6) motion and, thus, is inapposite for that additional reason.

In *Vaccaro v. CVS Pharmacy, Inc.*, 2013 WL 3776927 (S.D. Cal. July 16, 2013) and *Mata v. Veros Credit, LLC*, 2017 WL 2644633 (C.D. Cal. Jan. 20, 2017), both courts relied on *Johansen v. Vivant, Inc.*, 2012 WL 6590551 (N.D. Ill. Dec. 18, 2012), for the propositions that "using an artificial or prerecorded voice is a factual allegation rather than a legal conclusion" and a bare allegation a call is prerecorded is sufficient to survive dismissal. *See* 2013 WL 3776927, at *2; 2017 WL 2644633, at *4. But those courts misapprehended the core holding in *Johansen*, where the court qualified its language: "Use of an ATDS and the pre-recorded nature of the messages are not legal conclusions, they are facts. ***Still, when a fact is itself an element of the claim, as is the case here, it is not sufficient to recite that fact verbatim without other supporting details.***" 2012 WL 6590551, at *3 (emphasis added). This oversight is critical and shows *Vaccaro* and *Mata* are also of no moment.

Plaintiff also cites to *Greene v. Select Funding, LLC,* 2021 WL 4926495 (C.D. Cal. Feb. 5, 2021), and argues that the use of a specific person's name during the calls in this case does not weigh against her conclusions that the messages were "prerecorded." *See* Dkt. 15 at 7, n. 3. There, however, the plaintiff alleged that he answered the call and interacted with the caller, where the caller asked him questions and still kept speaking after he indicated that he was not the intended recipient, and then ended the call abruptly. *See* 2021 WL 4926495, at *1. Plaintiff provides no such contextual details here. The *Greene* court also relied solely on the critically-flawed *Rahn* decision for its holding on this point. Therefore, *Greene* should carry no weight here, either.

In *Van Baalen*, the court somehow inferred that the plaintiff had "received identical, prerecorded calls" based solely on one conclusory allegation that unidentified callers "left a generic, standardized prerecorded message in Plaintiff's phone's voice-mail.'" *Van Baalen v. Mut. of Omaha Ins. Co.*, 729 F. Supp. 3d 1239, 1249 (D.N.M. 2024). If that extreme inferential leap

13

were not bad enough, the court also rejected the defendant's argument that the plaintiff needed to plead contextual details about the subject calls to support an inference they were prerecorded. *Id*. Myriad other courts have ruled differently, as the Motion shows. Thus, *Van Baalen* is an outlier.

In *Cabral*, the plaintiff alleged that other "'consumers have posted recordings on the Internet of the same robocall received by Plaintiff.'" *Cabral v. Penske Truck Leasing Co. LP,* 2024 WL 1916701, at *6 (M.D. Pa. May 1, 2024). In this case, Plaintiff does not allege such a fact and, at best, avers in conclusory fashion that the two subject messages (which she tellingly does not fully transcribe in her Complaint) were "identical or substantially identical." Dkt. 1, ¶¶ 19, 27, 30.

**Third**, Plaintiff argues that "[t]o the extent Firstsource truly believes that the messages are not prerecorded or made with an artificial voice, it can say so through its reply." Dkt. 15 at 9. Such an inappropriate argument has no place in the context of a Rule 12(b)(6) motion, and does not warrant any serious consideration by this Court. It is ***Plaintiff's*** obligation to plead plausible facts to support her conclusions that the calls were "prerecorded," not Firstsource's. She has not done so, and thus the Court should dismiss on this additional basis.

## III.    CONCLUSION

Plaintiff's Complaint should be seen for what it is: another opportunistic TCPA plaintiff, distorting the purpose of the TCPA looking for an unjustified financial windfall with a pleading lacking in factual support. Countless courts throughout the country have dismissed similarly-defective TCPA complaints under Rule 12(b)(6). This Court should join them and grant the Motion.

Dated: March 25, 2025

Respectfully submitted,

/s/ Casey L. Hinkle
Casey L. Hinkle
Michael T. Leigh
**Kaplan Johnson Abate & Bird LLP**
710 W. Main St., 4th Fl.
Louisville, KY 40202
Tel:   (502) 416-1630
Email: chinkle@kaplanjohnsonlaw.com
         mleigh@kaplanjohnsonlaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2025, the foregoing was filed via the Court's electronic filing system, which will automatically send notice of such filing to all counsel of record.

/s/ Casey L. Hinkle
*Counsel for Defendant*